NATIONAL EQUIPMENT RENTAL, LTD., Plaintiff,

v.

T. G. STANLEY, doing business as Stanley's Drug Store, Defendant.

Civ. A. No. 17725.

United States District Court
E. D. New York.

Oct. 19, 1959.

See, also, D.C., 156 F.Supp. 548.

Wilbur G. Silverman, Brooklyn, for plaintiff.

Benjamin R. Raphael, Brooklyn, N. Y., and Sidney S. Rubin, New York City (of Raphael & Dorman, Brooklyn, N. Y.), for defendant.

STEEL, District Judge.

Plaintiff has moved under Rule 50(b), 28 U.S.C.A., to set aside a verdict and judgment for defendant and for the entry of a judgment for plaintiff, or, alternatively, for a new trial.

Plaintiff sued to recover accelerated and unpaid "rentals" of $17,810.53 claimed to be owing by defendant for drugstore equipment which plaintiff "leased" to defendant, $6,000 of expenses incurred by plaintiff in enforcing its claim, and for the repossession of this equipment. All of these claims were based upon the terms of the "lease". The only defense of present concern is that of usury, it being defendant's theory that, although the transaction was in the form of a lease, the parties intended the transaction to be a loan. As part of the transaction plaintiff had "purchased" the equipment from the defendant for $21,593.15, and then "leased" it back to defendant under the agreement sued upon which required defendant to pay plaintiff $26,683.44 in installments over a five-year period. Defendant contended that the

difference between the amount which plaintiff advanced to defendant as the "purchase price" of the equipment and the amount which defendant was required to pay plaintiff as "rentals" constituted interest which exceeded the legal rate in New York.

█ The agreement by its terms is deemed to have been entered into in New York, and the rights and liabilities of the parties are determinable by New York law. The usury laws of New York are found in New York General Business Law, §§ 370–373. In substance they prohibit one from receiving more than 6% per annum for the loan of money and provide that any contract which reserves a greater sum shall be void and its prosecution enjoined.

In a discussion in chambers prior to the close of plaintiff's case, plaintiff admitted that if the jury should determine that the transaction was a loan, then the agreement was illegal, usurious and unenforceable. This same concession was reiterated when the plaintiff successfully opposed the introduction of evidence by defendant to establish that the effective rate of return to plaintiff was in excess of 15%. The question for resolution was thus reduced to whether the transaction was a loan or a lease; and pursuant to F.R.Civ.P. 49(a), the jury was asked the following question:

"Was the agreement between the parties in truth and in fact one for a loan of money or was it one for the leasing of equipment?"

The jury was instructed that when usury is a defense a transaction must be judged by its real character and not by its form,[1] that the intention of the parties is of paramount importance in determining its nature,[2] and that if the jury concluded that both parties intended the transaction to be a loan of money but corruptly cast it in the form of a lease of equipment, then the usury defense would be established[3] and the question should be answered "loan of money". A converse instruction was also given. The jury answered the question "loan of money". Thereupon judgment for defendant was entered.

The present motion was filed within ten days after the entry of the judgment, plaintiff having unsuccessfully moved for a directed verdict at the close of all the evidence.

## Motion for Judgment N.O.V.

█ In determining a motion for judgment notwithstanding the verdict, the question is not whether the verdict is against the weight of the evidence. This is for the jury to decide. Only where there is no evidence of substance upon which reasonable men could reach the verdict is a trial judge empowered to set the verdict aside and enter a judgment for the adverse party. Binder v. Commercial Travelers, Mut. Acc. Ass'n, 2 Cir., 1947, 165 F.2d 896, 901.

Here there was evidence which, if believed, would support the view that a loan was intended.

The transaction was negotiated between defendant and Rosen, the president of plaintiff.[4] The defendant testified that he called Rosen on the telephone

---

1. Knickerbocker Life Ins. Co. v. Nelson, 1879, 78 N.Y. 137, 149; Quackenbos v. Sayer, 1875, 62 N.Y. 344, 348; National Equipment Rental, Ltd. v. Stanley, D.C. E.D.N.Y.1957, 156 F.Supp. 548 (opinion of Judge Zavatt denying the motion for summary judgment in the case at bar).

2. Bishop v. Rider, 143 Misc. 291, 235 App. Div. 736, 255 N.Y.S. 787, 792 (App.Div. 1932), affirmed 1933, 261 N.Y. 512, 185 N.E. 717. Accord, In re Bechtoldt's Estate, Sur.1936, 159 Misc. 725, 289 N.Y.S. 838, 844; De Korwin v. First National Bank of Chicago, D.C.N.D.Ill.1958, 170 F.Supp. 112, 128 (Court gives a comprehensive construction of the New York Usury Law); Annotation, 1946, 165 A.L.R. 626, 631.

3. Topping v. Trade Bank of New York, 2 Cir., 1936, 86 F.2d 116, 117; Grannis v. Stevens, 1916, 216 N.Y. 583, 111 N.E. 263, 266.

4. Rosen had died before trial but his deposition was introduced in evidence by the defendant.

and told him that he desired to refinance some equipment and that he asked Rosen to lend him some money against it. According to defendant, Rosen said he would. Defendant testified that he asked Rosen what the rate of interest would be and Rosen said six percent. Defendant stated that he was quite sure that the word "loan" had been used in the conversation, although Rosen had told him that the contract would be in the form of a lease so as to give the defendant certain income tax benefits.

When plaintiff advanced the funds with which to "purchase" the equipment,[5] it did so without having any one look at the equipment, without having an appraisal made of it, and without having a lien or mortgage check made to see whether it was encumbered. Rosen testified that he did not know the age or condition of the equipment, and that he had never asked defendant to show him what the defendant had paid for it. Defendant sent plaintiff a financial statement which showed a net worth in the neighborhood of $200,000. Rosen said that in entering into this type of transaction he relied upon the financial responsibility of the lessee, that basically the financial standing of the lessee is what counted, and that the quality, nature and kind of equipment were secondary considerations.

■ This evidence, if believed, was sufficient to justify the jury in concluding that the parties intended the transaction to be a loan and not a lease.

Plaintiff argues, however, that before usury can be established, both parties must have entered into the transaction with a "corrupt" intention in the sense that each intended the transaction to be a cover for a usurious loan. Plaintiff asserts that this essential legal ingredient is absent, and that there was no evidence before the jury which either directly, or by inference, disclosed that the payment or reception of interest at a usurious rate was in the mind of either party. On the contrary, plaintiff argues, the undisputed evidence proved that the transaction was *bona fide* and that both parties intended the transaction to be a lease so that the defendant could take the rental payments as business deductions in computing his federal income tax.

■■ Plaintiff misconceives the law in its application to this case. Here, the jury was not called upon to determine whether the loan was usurious. It was simply asked to decide whether a loan was intended. Plaintiff conceded that if the transaction was a loan, then the amount of return it received was "more than 6% and * * * not * * * an accident", and that the agreement was usurious and unenforceable.[6] This eliminated the need for proof that the parties were actuated by a specific desire to circumvent the usury laws and that they utilized the lease to hide their true purpose. For it is the law that the voluntary and conscious taking of greater interest for a loan of money than that allowed by law is *per se* usurious. The prerequisite intention essential to usury is simply the intention to take more than the legal rate of interest. Fiedler v. Darrin, 1872, 50 N.Y. 437, 443–444. Although Fiedler v. Darrin was decided many years ago it was recently relied upon in De Korwin v. First National Bank, D.C.N.D.Ill.1958, 170 F.Supp. 112, 128–129 as containing a correct exposition of New York usury law. Other pronouncements of the New York law consistent with Fiedler v. Darrin are found in Heidenheimer v. Mayer, 1877, 10 Jones & S. 506, 514, 42 N.Y. Super.Ct. 506, 514, affirmed 1878, 74 N. Y. 607; Bank of Salina v. Alvord, 1865, 31 N.Y. 473, 479; Vee Bee Service Co. v. Household Finance Corp., Sup.1944, 51

---

5. Only part of the money was advanced to the defendant directly. The remainder was paid at the direction of the defendant to Key & Company which held a chattel mortgage on certain equipment owned by defendant.

6. Tactically, this was a wise concession for plaintiff to make. It prevented the introduction of evidence by defendant to establish that plaintiff's effective rate of return was in excess of 15%—evidence which, if believed, would have been prejudicial to plaintiff.

N.Y.S.2d 590, 611, affirmed 1945, 209 App.Div. 772, 55 N.Y.S.2d 570; In re Fishel, Nessler & Co., D.C.S.D.N.Y.1911, 192 F. 412. In the posture of the case *sub judice,* I do not understand Orvis v. Curtiss, 1899, 157 N.Y. 657, 52 N.E. 690; Condit v. Baldwin, 1860, 21 N.Y. 219 or Cohen v. Beaudry, City Ct.1950, 100 N.Y. S.2d 519, which plaintiff relies upon, to state a different rule.

■ It is true that the jury was instructed that the existence of a "corrupt" intention to cast the transaction in the form of a lease was essential to a finding that a loan was intended. Because of plaintiff's concessions, this instruction should not have been given. From the standpoint of the plaintiff, however, the instruction was beneficial rather than prejudicial, for it imposed upon the defendant the burden of proving an element which was not necessary to his defense.

■ Additional arguments of plaintiff rest upon the testimony of defendant that in paying his federal income tax he treated the payments which he made to plaintiff as rent and took them as business deductions, and defendant's later testimony that he thought the transaction was to be a conditional sale. Plaintiff has argued that this testimony is inconsistent with a belief on defendant's part that a loan was intended. Be that as it may, it is not conclusive evidence that no loan was intended. 9 Wigmore on Evidence § 2594a (3d Ed. 1940). Since other evidence (previously detailed) substantiated the verdict, the jury was free to accept such evidence and to reject that upon which the plaintiff relied, even though the latter consisted of the defendant's own testimony. Cf. Cannon v. Fargo, 1918, 222 N.Y. 321, 118 N.E. 796, 797, reversing 1915, 168 App.Div. 921, 152 N.Y.S. 834, affirming 1914, 165 App. Div. 931, 150 N.Y.S. 1079; Cohen v. Barry, Sup.1908, 111 N.Y.S. 668 (per curiam); The Seeandbee, 6 Cir., 1939, 102 F.2d 577, 581.

The record contains evidence of substance upon which reasonable men could have answered the first interrogatory as the jury answered it. Plaintiff's motion for judgment n. o. v. will therefore be denied.

### Motion for New Trial

■ Plaintiff's motion for a new trial presents the question whether the verdict is so clearly against the weight of the evidence that it is contrary to right and justice to allow it to stand. Burris v. American Chickle Co., D.C.E.D.N.Y.1940, 33 F.Supp. 104, 108, affirmed 2 Cir., 1941, 120 F.2d 218; Benjamin v. Lehigh Valley R. Co., D.C.W.D.N.Y.1950, 10 F.R.D. 154, 155, 158.[7]

■ Had the Court been a member of the jury it would have concluded, contrary to the jury's answer to the first interrogatory, that the parties in truth and in fact intended to enter into a lease. This is primarily because of the inherent weaknesses and inconsistencies in the defendant's own testimony. But the fact that the Court would have reached a result different from that arrived at by the jury is not in and of itself sufficient to warrant the granting of a new trial. Sargent v. Home Benefit Association, C.C.S.D.N.Y.1888, 35 F. 711, 713, affirmed 1892, 142 U.S. 691, 12 S.Ct. 332, 35 L.Ed. 1160; Markusen v. General Aniline & Film Corp., D.C.S.D.N.Y. 1954, 16 F.R.D. 455, 459.

■ It cannot be doubted that there was evidence of a substantial kind before the jury from which the jury could rationally conclude that a loan was intended. Most of this evidence has already been detailed in the discussion pertaining to plaintiff's motion for judgment n. o. v. Apparently the jury disbelieved the deposition testimony of Rosen, plaintiff's president, that a loan was never discussed, and believed those parts of defendant's testimony which substantiated an intention by the parties to make a loan, even though other parts of defend-

---

7. The difference in the criteria to be applied in ruling upon a motion for judgment n. o. v. and upon a motion for a new trial is stated with precision in Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350, 354.

ant's testimony tended to negative such an intention or were equivocal. But the jury was entitled to believe those portions of defendant's testimony which were favorable to defendant and to disregard other portions which were adverse to defendant, either because the jury believed that the defendant was confused or did not understand the legal matters about which he was examined, or for any other reason.

The result of the verdict is harsh, but if the transaction was usurious the forfeiture which follows is one prescribed by the legislature. The severity of the result therefore affords no basis for the Court to set aside the verdict unless it is so clearly against the weight of the evidence as to be contrary to right and justice. The Court does not find that it is.

Plaintiff's motion for a new trial will be denied.